U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 0 7 2005

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| WALTER K. RILEY | CIVIL ACTION NO. 04-CV-1331 |
| VERSUS | JUDGE LITTLE |
| WARDEN, AVOYELLES CORRECTIONAL CENTER | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned Magistrate Judge for report and recommendation in accordance with a standing order of this court.

### Statement of Claim

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Walter K. Riley ("Riley") on June 23, 2004. Riley is attacking the validity of his 1998 conviction by a judge in the Louisiana Ninth Judicial District Court, Rapides Parish, on one count of armed robbery. (Doc. #1.) Riley was sentenced to twenty-five years at hard labor, without the benefit of probation, parole, or suspension of sentence.[1] (R. 4.) Riley is presently confined in the Avoyelles Correctional Center.

---

[1] Riley appealed his conviction and sentence to the Third Circuit Court of Appeals. On June 2, 1999, that court affirmed the conviction but vacated the sentence and remanded for resentencing. See State v. Riley, 1999-0015 (La. App. 3d Cir. 6/2/99), 744 So.2d 236 (unpublished). On July 9, 2001, Riley was re-sentenced to serve twenty-five years at hard labor without the benefit of probation, parole, or suspension of sentence.

Riley raises the following grounds for habeas relief in his petition:

1. He did not knowingly and voluntarily waive his right to a trial by jury;
2. There was insufficient evidence to support his conviction;
3. The out-of-court identification of the defendant and in-court identification of the defendant should have been suppressed.

Riley alleges, the respondent admits, and the record reflects exhaustion of Riley's state court remedies. Riley's habeas petition is now before the court for disposition.

## Rule 8(a) Resolution

This court is able to resolve the merits of this *habeas corpus* petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the petitioner, and the State court records provide the required and adequate factual basis necessary to the resolution of the *habeas corpus* petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

Under the AEDPA standard of review, which is applicable to habeas petitions filed after AEDPA became effective on April 24, 1996, pure questions of law are reviewed under the "contrary to" standard, while pure questions of fact are reviewed under the "unreasonable determination of the facts" standard. However, mixed

questions of law and fact are reviewed under the "unreasonable application" standard. <u>Drinkard v. Johnson</u>, 97 F.3d 751, 767-68 (5th Cir.1996), cert. den., 520 U.S. 1107 (1997). An application of law to facts is unreasonable only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect. In other words, habeas relief can be granted only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists. <u>Drinkard</u>, 97 F.3d at 769. This standard of review is akin to the "clearly erroneous" standard. <u>Mata v. Johnson</u>, 99 F.3d 1261, 1267 (5th Cir.1996), *vacated in part on reh'g*, 105 F.3d 209 (5th Cir.1997); <u>Bolden v. Warden</u>, 194 F.3d 579, 583 (5th Cir. 1999), *cert. den.*, 120 S.Ct. 1969 (May 15, 2000).

## Facts

The Louisiana Court of Appeal, Third Circuit, set forth the facts of this case in an unpublished opinion at <u>State v. Riley</u>, 99-15 (La.App. 3 Cir. 6/2/99); 774 So.2d 236, *writ denied*, 99-1932 (La. 12/17/99); 751 So.2d 873:

"On December 18, 1997, Taurus Holmes spoke with Clyde Johnson, a witness for the State on trial, on two separate occasions. During one such encounter, Holmes, who was armed with a .380 caliber pistol, told Johnson that he was going to pick up the Defendant, Kevin Riley, who was armed with a 12-gauge shotgun and that together they were going to rob the

victim, Kevin Martin. Johnson decided not to go; however, he dropped off Holmes at Colin Mason's house, another State witness. Later during the evening, Johnson recalled seeing Mason driving a vehicle with Holmes, Riley, and an unnamed individual in the vehicle.

Mason, who was not previously associated with the Defendant, picked up the defendant at his house, as a favor to Holmes. Mason drove the Defendant, Holmes, and an unnamed individual to the crime scene. The Defendant, Holmes, and the unnamed individual entered the house to "get something." Mason testified that he heard multiple shots and the group reentered the car and urged him to leave the scene. Mason returned the Defendant to his residence.

The victim's fiancé, Pam Jones, testified that on the night of the murder she returned from work and went to sleep some time after 9:30. Around 1:00 a.m., she was awakened by a knock at the door. She heard Kevin Martin say "Clyde," and thereafter returned to sleep. Eventually, she was awakened by a gunshot and discovered Kevin Martin on the floor, the victim of multiple gunshot wounds.

The weapons utilized were determined to be a .380 caliber pistol and a shotgun. A bag full of pennies was subsequently discovered missing from the apartment. A 12-gauge shotgun was recovered from the trunk of Mason's vehicle."

## Law and Analysis

Issue No. 1: <u>Waiver of Right to Trial by Jury</u>

Riley claims that, before trial, his attorney informed him that it would be best that he went to trial before a judge rather than a jury. (Doc. #1, p.2.) Riley asserts that he was unaware that he had a right to a jury trial, and argues that he did not validly waive that right. Riley raised this issue on direct appeal in 1999, and the appellate court found that Riley had validly waived his right to trial by jury. The undersigned agrees.

Riley's attorney submitted a Motion and Order to Waive Trial by Jury on August 10, 1998. (R. 7.) Attached to that motion was an affidavit signed by Riley stating that he had been advised by his counsel of his right to trial by jury and of his right to waive trial by jury and to proceed to trial before the bench alone; and that it was his desire to waive the trial by jury and to be tried before the bench. (R. 8.) Furthermore, the motion was submitted in open court by Riley's attorney in Riley's presence. (R. 3.) The record is clear that Riley was aware of his right to counsel, and he knowingly and voluntarily waived that right.

Issue No. 2: <u>Sufficiency of Evidence</u>

Next, Riley claims that there was insufficient evidence to support his conviction of one count of armed robbery. (Doc. #1, p.2.) Riley claims that there was no gun, and nothing of value was shown taken.

A reviewing court confronted with a claim of insufficient evidence must, after viewing all the evidence in the light most favorable to the prosecution, determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Cupit v. Whitley, 28 F.2d 532, 542 (5th Cir. 1994), cert. denied, 513 U.S. 1163 (1995), citing Jackson v. Virginia, 443 U.S. 307 (1979). To apply this standard, the court looks to elements of the offense as defined by state substantive law. Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001).

Louisiana Revised Statute 14:64 provides, in pertinent part:

> "A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

One of the witnesses at Riley's trial was Clyde Johnson. Johnson testified that he knew Taurus Holmes and Walter Riley. (R. 191.) Johnson stated that, on December 19, 1997, Taurus Holmes spoke with him about robbing Kevin Martin, but Johnson declined to participate. (R. 193.) Johnson stated that Holmes was going to pick up Riley with the intention of procuring a 12 gauge shotgun. (R. 194.) Johnson also testified that Holmes was armed with a .380 handgun. (R. 194.) Johnson met Holmes, Mason, Riley, and some other individual later that evening at Kim's Store on Lee Street. (R. 194.) Johnson had another discussion with Holmes about robbing Kevin Martin, but that discussion was not in Riley's presence. (R. 194.) Johnson gave a statement to the police shortly after the

robbery, but did not identify Riley at that time. At trial, Johnson positively identified Riley as an occupant of the vehicle that Holmes was in on the evening of the robbery. (R. 196.)

Another witness at trial was Colin Mason. Mason testified that he was allowed to plead guilty to first degree robbery in return for his truthful testimony against Riley. (R. 80-81.) Mason testified that he knew Holmes, but had not really known Johnson or Riley. However, Mason testified that on December 19, 1997, Johnson dropped Holmes off at his house. Together, Mason and Holmes went to pick up Riley at his house. (R. 84.) Mason, the driver of the vehicle, parked the car on Thirteenth Street, while Holmes, Riley, and another man went inside to "get something." (R. 85.) Mason sat in the car and, after a while, heard gunshots. (R. 89.) Holmes, Riley, and the other man came back to the car and told him to leave the scene, and Mason drove off with the men. (R. 89.) Mason dropped the three men off and returned home. Upon a search of the vehicle, the police found ammunition. Mason testified that he did not know what the items found were or how they got in his car.

Pamela Jones, the fiancé of the victim, testified that Martin kept his money in a blue bank bag, which he carried with him everywhere. (R. 187.) Jones testified that she saw the bag before her fiancé was murdered, but had not seen it since.

Riley was dropped off at the home of the victim, knew of the

7

plans to rob the victim, and provided a shotgun for the occasion. (R. 194.) Shortly after Riley exited the vehicle, shots were heard. Thereafter, Riley returned to the vehicle. The victim was found with multiple gunshot wounds, including two wounds from a 12-gauge shotgun. (R. 160, 170.) Two spent 12-gauge shotgun shells were found at the crime scene, and a loaded 12-gauge shotgun shell was found in the trunk of Mason's vehicle. (R. 174.) Riley admitted in a statement to police that he provided 12-gauge shotgun shells to Holmes in order to rob someone. (R. 85-86.) The victim's fiancé found a money bag missing, and the bag was never recovered. Based on the forgoing, it does not appear that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

Issue No. 3: <u>The out-of-court identification of the defendant and in-court identification of the defendant should have been suppressed.</u>

Riley argues that the trial court should have suppressed out-of-court identification and subsequent in-court identification by Colin Mason. Additionally, Riley contends that the police procedures in the out-of-court identification were unduly suggestive, thereby tainting the in-court identification. While a single photograph identification should be viewed in general with suspicion, <u>Simmons v. United States</u>, 390 U.S. 377 (1968), such a procedure was not used in this case. Rather, a three or six

picture photographic array was utilized. (R. 135, 146.) When shown the photos, Mason could not provide the officers with Riley's name, but indicated that he recognized him and knew who he was.

Even if the identification procedure had been suggestive, the courts look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification. See Manson v. Brathwaite, 432 U.S. 98 (1977). The factors include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.

In this case, Mason had ample opportunity to view Riley as Mason was the driver in the robbery and Riley was a passenger in his vehicle. Mason knew where Riley lived, picked up Riley at his home, and drove Riley around for several hours. (R. 80-86, 124.) Mason saw Riley and the other individuals enter the home of the victim, and Mason drove them all away from the crime scene. Mason paid attention to Riley and knew where Riley was seated in his vehicle (R. 124). Mason was positive that Riley was in the car with him on the night of the robbery/murder. (R. 109, 124.) Mason was shown the photos of those involved with the robbery the day after the robbery took place. Thus, even if the photographic

lineup had been unduly suggestive, it does not appear from the totality of the circumstances that the in-court identification of Riley was compromised.

## Conclusion

Based on the foregoing discussion, Riley has not presented claims to the court that warrant relief. Therefore, IT IS RECOMMENDED that Riley's petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 7th

day of September, 2005.

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　James D. Kirk
　　　　　　　　　　　　　　　United States Magistrate Judge